## S06A1115. THE STATE v. WOODS.
(632 SE2d 654)

CARLEY, Justice.

Thomas Woods was arrested for financial transaction card fraud after allegedly using a credit card belonging to his uncle, James Price, who had been missing for three months. The police were actively investigating that disappearance. After being placed in an interview room and advised of his constitutional rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), Woods unambiguously invoked his right to counsel. Within an hour, Sergeant Stewart entered the room, expressed his knowledge of the request for a lawyer, urged Woods not to say anything, and told him that everyone should have the opportunity to bury their loved ones, as did Stewart himself recently when his father and brother died. Woods started to cry and, as the officer was leaving the room, confessed to killing Price and told Stewart where he disposed of the body. The body was found, and Woods was indicted for malice murder, felony murder, and aggravated assault.

At a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), the State conceded that Woods' statements are inadmissible, but contended that the fruits thereof are nevertheless admissible because the statements were voluntarily made and were not the product of coercive police activity. Only Sergeant Stewart testified, and the trial court found that, although he intended to obtain truthful information, his psychological ploy predictably caused the 17-year-old defendant's tearful confession. The trial court suppressed the fruits of Woods' statements, concluding that the State failed to show their voluntariness by a preponderance of the evidence. The State appeals directly from this order pursuant to OCGA § 5-7-1 (a) (4).

"On appeal, 'the trial court's findings as to disputed facts will be upheld unless clearly erroneous . . . . (Cit.)' [Cit.]" *State v. Davison*, 280 Ga. 84, 85 (1) (623 SE2d 500) (2005). However, " '(w)here the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review[.]' . . . [Cit.]" *Silva v. State*, 278 Ga. 506, 507 (604 SE2d 171) (2004). Only Stewart testified at the *Jackson-Denno* hearing, that testimony was consistent, the trial court relied on it, and Stewart's credibility was not at issue in the

trial court's order or otherwise. Because there are not any disputed facts or credibility issues, we must independently review the undisputed evidence to determine whether the trial court erred in its legal conclusion that Woods' statements were involuntary. *State v. Davison*, supra; *Silva v. State*, supra at 507-508. The State correctly conceded the inadmissibility of the statements themselves, because of Woods' prior unambiguous request for an attorney. *Edwards v. Arizona*, 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981); *Taylor v. State*, 274 Ga. 269, 271 (1) (553 SE2d 598) (2001). As the trial court recognized, however, "the 'fruit' of a voluntary statement obtained in violation of *Edwards v. Arizona* is not subject to the exclusionary rule. [Cits.]" *Taylor v. State*, supra at 276 (4). Thus, the voluntariness of Woods' statements is indeed the dispositive issue.

In its analysis, the trial court relied, in part, on the absence of an attorney despite Woods' specific request for counsel. However, "[a] violation of a suspect's rights under *Edwards v. Arizona* does not mean that the suspect's ensuing statement was involuntary. [Cits.]" *Taylor v. State*, supra at 273 (2). See also *State v. Davison*, supra at 87 (2) ("the failure to comply with the mandate of *Miranda* is not itself a coercive tactic. [Cit.]"). Furthermore, it would be nonsensical to hold that the fruit of a voluntary statement is admissible in spite of an *Edwards* violation, but that such violation nevertheless renders the statement involuntary.

The trial court relied primarily on Stewart's emotional appeal to the youthful defendant regarding the need of the officer and others for the opportunity to bury their loved ones. However, "[p]olice appeals to the defendant's sympathies, such as by the now-famous 'Christian burial speech' ploy, 'do not automatically render a confession involuntary[.]' [Cits.]" 2 LaFave, Israel and King, Criminal Procedure § 6.2 (c), p. 459 (2nd ed. 1999). Such an emotional appeal, like the use of trickery or a psychological ploy, does not make a confession involuntary if, as the trial court found here, the means employed are not calculated to procure an untrue statement. *Brown v. State*, 278 Ga. 724, 728 (3) (609 SE2d 312) (2004); *DeYoung v. State*, 268 Ga. 780, 789 (8) (493 SE2d 157) (1997). "And absent any evidence that the police investigative techniques were designed to induce the 'slightest hope of benefit or . . . fear of injury,' the resulting statements are not rendered involuntary . . . under OCGA § 24-3-50. [Cits.]" *DeYoung v. State*, supra. The State presented unrefuted evidence that Woods was neither threatened with the remotest fear of injury nor promised any hope of benefit.

The well-known "Christian burial" case in the Supreme Court of the United States, *Brewer v. Williams*, 430 U. S. 387 (97 SC 1232, 51 LE2d 424) (1977), is clearly distinguishable. That case did not involve the Fifth Amendment privilege against self-incrimination, but rather

the Sixth Amendment right to counsel, which was violated when an officer gave the defendant the Christian burial speech despite an express agreement with previously obtained counsel not to question him. There was not any such agreement here, Woods had not yet obtained counsel when he made his statements, and he properly asserted only a violation of his Fifth Amendment rights. *Stanley v. State*, 240 Ga. 341, 344-345 (2) (241 SE2d 173) (1977).

Persuasive authority recognizes that an officer's statements regarding the need of the victim's family to locate the body for burial, even though they are likely to have an emotional effect on the defendant, are not sufficient to make an otherwise voluntary statement inadmissible. *Nelson v. State*, 850 S2d 514, 523 (Fla. 2003). Sergeant Stewart's statements to Woods did not even refer to the victim's family in this case, but only to the officer's own experience and to the common need for an opportunity to bury loved ones. Furthermore, "[i]n the instant case, there was no police deception, nor did the police inject Christianity or any other religion into the exchange." *Nelson v. State*, supra at 524. Under these circumstances, Stewart's speech, regardless of Woods' resulting mental state or his age, did not constitute any evidence whatsoever of coercive police activity, which was a necessary predicate to the trial court's finding that his confession was not voluntary. *Livingston v. State*, 264 Ga. 402, 407-408 (6) (444 SE2d 748) (1994).

Since a review of the hearing transcript does not reveal any other " 'evidence which would authorize the grant of the motion to suppress, a remand is unnecessary. (Cit.)' [Cit.]" *State v. Davison*, supra at 86 (2). Under the undisputed testimony, the "police in this case failed to honor [Woods'] request for counsel, but they did not violate [his] Fifth Amendment right against coerced self-incrimination." *Taylor v. State*, supra at 276 (4). Accordingly, the trial court erred in suppressing the fruits of Woods' voluntary statements.

*Judgment reversed. All the Justices concur, except Benham, J., who dissents.*

DECIDED JULY 13, 2006.

*Gwendolyn Keyes Fleming, District Attorney, James M. McDaniel, Leonora Grant, Assistant District Attorneys, Thurbert E. Baker, Attorney General*, for appellant.

*Sexton, Key & Hendrix, Lee Sexton, Joseph S. Key*, for appellee.